UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD SCOTT SHAFER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00040 |
| | § | |
| MICHAEL RUTLEDGE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
ON PENDING MOTIONS**

Plaintiff Richard Scott Shafer, an inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is a Motion to Dismiss filed by Michael Rutledge, Joseph Wright, the Commissary Manager, Christi Garcia, and Dorian Garza.  (D.E. 41).  Plaintiff has filed an affidavit, which the undersigned construes as a motion for preliminary injunctive relief.  (D.E. 47).

For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion (D.E. 41) be **GRANTED in part** and **DENIED in part** and that Plaintiff's motion for preliminary injunctive relief (D.E. 47) be **DENIED**.

I.      **JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

Plaintiff's Supplemental Complaint, received by the Court on June 16, 2021, is the operative pleading in this case.  (D.E. 27).  Plaintiff sues the following defendants in their individual and official capacities: (1) Michael Rutledge (Rutledge), the former Director of the TDCJ's Chaplaincy Department; (2) Joseph Wright (Wright), the Senior Chaplain at the McConnell Unit; (3) the McConnell Unit's Commissary Manager;[1] (4) McConnell Unit Captain Christi L. Garcia (Garcia); and (5) McConnell Unit Captain Dorian Garza (Garza). (D.E. 27, pp. 2-4).  Plaintiff asserts violations of his right to practice his Messianic Jewish faith under the RLUIPA as well as the First Amendment and Fourteenth Amendment's Equal Protection Clause.  (D.E. 27, pp. 8-9).  Plaintiff seeks declaratory, injunctive, and monetary relief.  (D.E. 27, pp. 9-11).

On September 30, 2021, Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to which Plaintiff has filed a response. (D.E. 41, 42).  Defendants subsequently filed a reply.  (D.E. 43).   As permitted by the

---

[1] Defendants have informed the Court that Jackee Soliz was the McConnell Unit's Commissary Manager until September 23, 2021.  (D.E. 41, p. 7 n.2).  The undersigned respectfully recommends that Soliz be substituted in place of "the Commissary Manager" to the extent this defendant is sued in his or her individual capacity.

Court, Plaintiff filed a sur-reply on November 3, 2021. (D.E. 46). On December 20, 2021, Plaintiff filed a motion seeking preliminary injunctive relief. (D.E. 47).

## III.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following relevant facts in his Supplemental Complaint. (D.E. 27). Since 2002, Plaintiff "has been a Messianic Jewish believer." (*Id.* at 2). On October 15, 2019, Garza came to Plaintiff's cell to ask why Plaintiff had refused to move to another cell. (*Id.* at 4). Plaintiff advised her that he had refused the housing assignment because his life been threatened. (*Id.*). Garza responded: "You're just a pussy, and all Jews are Christ killers and pussies, and like a pussy, you're going to get fucked!" (*Id.* at 4).

Plaintiff filed a Step 1 grievance against Garza for religious discrimination and harassment. (*Id.*). The Step 1 grievance was denied with a finding of no evidence to support Plaintiff's complaints. (*Id.*). Plaintiff filed a Step 2 grievance to which there was no response. (*Id.*).

In January 2020, Wright failed to respond to Plaintiff's requests relating to religious accommodations for observing the designated Messianic Jewish Holy Days and for a kosher diet. (*Id.* at 4-5). Because Wright refused to respond and provide any religious accommodations, Plaintiff filed a Step 1 grievance on January 18, 2020. (*Id.* at 5). Plaintiff's grievance was rejected on the grounds that the McConnell Unit is not a "kosher unit" and there were no holidays on TDCJ's approved religious holiday list showing a communal meal for Jewish Messianic members. (*Id.* at 5). Plaintiff, however, requested kosher meals at all times "pursuant to Divine laws" and not just during observation of Holy

3 / 50

Days.  (*Id.*).  According to Plaintiff, an inmate is forced under TDCJ policy to change his religious designation to Orthodox Judaism in order to be transferred to a TDCJ unit that has "Jewish programming," including access to kosher meals.  (*Id.* at 8).  Plaintiff's Step 2 grievance was also denied.  (*Id.* at 5).

At some point in January 2020, Plaintiff sent Rutledge a letter in an attempt to resolve issues related to his requests ignored by Chaplain Wright.  (*Id.* at 5).  Rutledge, however, failed to respond to Plaintiff's letter.  (*Id.*).  In late January 2020, Plaintiff filed a Step 1 grievance against Rutledge complaining about his failure to respond and asserting discrimination.  (*Id.*).  Plaintiff's grievance was returned unprocessed on February 15, 2020.  (*Id.*).  Plaintiff sent another Step 1 grievance regarding Rutledge but it also was returned as unprocessed.  (*Id.*).

On January 30, 2020, Garcia stopped Plaintiff as he was leaving the unit's chow hall and instructed Plaintiff to remove his head covering because it was not purchased at the Commissary.  (*Id.* at 6).  Plaintiff advised Garcia that that his head covering was not available in the Commissary and that he received it though a donation by a religious group. (*Id.*).  Plaintiff further advised her that his head covering was pre-approved by the warden and head chaplain at another unit.  (*Id.*).  Garcia harassed Plaintiff about his head covering and threatened him with physical harm if he did not remove it.  (*Id.*).  Plaintiff complied with Garcia's order and was able to retain ownership of it.  (*Id.*).  Plaintiff states that the religious headwear available for purchase at the Commissary does not conform with the mandates of the Plaintiff's religion and his beliefs."  (*Id.*).

On January 30, 2020, Plaintiff filed a Step 1 grievance complaining about the actions of Capt. Garcia.  (*Id.*).  Plaintiff's Step 1 grievance was rejected upon a finding that "religious headwear not purchased on Commissary can only be worn in housing areas during religious services."  (*Id.*).  Plaintiff's Step 2 appeal was likewise rejected.  (*Id.*).

The McConnell Unit's Commissary Manager denied Plaintiff access to certain items sold at the Commissary "for the use during the Jewish observances of Passover and the Feast of Unleavened Bread."  (*Id.*).  Plaintiff previously attempted to order these items, which are essential for observance of these holy days, but was denied unleavened bread and grape juice.  (*Id.* at 6-7).  Plaintiff attempted to purchase these items every year, and the TDCJ summarily restricted these items such that they do not meet the required amounts needed for seven days of the Feasts.  (*Id.* at 7).

On April 7, 2020, Plaintiff filed a Step 1 grievance against the Commissary Department and its manager, complaining about violations of his religious freedoms.  (*Id.*).  Plaintiff's grievance was rejected on findings that the Commissary receives Passover items from the Huntsville warehouse once a year during the April holiday and that there was no evidence of staff misconduct.  Plaintiff's Step 2 grievance was likewise denied.  (*Id.*).

At some point, Plaintiff sent a request to Wright complaining about not getting a lay-in pass to observe all of the Holy Days that Plaintiff follows in accordance with his Messianic Jewish beliefs.  (*Id.* at 7).  On October 1, 2020, Plaintiff filed a Step 1 grievance complaining about Wright's conduct.  (*Id.*).  Plaintiff received a response to his Step 1 grievance indicating that live services would begin.  (*Id.*).  However, the grievance did not

address Plaintiff's complaint about being deprived his religious freedoms to observe mandatory holy days commanded by his faith.  (*Id.*).  Plaintiff's Step 2 grievance likewise failed to address and remedy his complaints.  (*Id.*).

## IV.   LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6).  (D.E. 16).  Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist.  *Id*.

Rule 12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 554-55.  When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## V.   DISCUSSION

### A.   Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for

monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

In his Supplemental Complaint, Plaintiff states that he seeks: (1) compensatory damages in the amount of $3,000.00 against Capt. Garcia and Capt. Garza, jointly and severally; and (2) punitive damages in the amount of $5,000.00 against each named defendant.  (D.E. 27, p. 11).  Plaintiff does not specify whether he seeks monetary relief against any named defendant in his or her individual capacity, official capacity, or both.

Defendants contend in their Motion to Dismiss that, to the extent Plaintiff sues them in their official capacities for money damages, those claims are barred by the Eleventh Amendment.  (D.E. 41, pp. 8-9).   Plaintiff responds, contrary to what he set forth in his Supplemental Complaint, that he seeks monetary relief only in the nature of punitive damages against Garcia and Garza in their individual capacities.   (D.E. 42, p. 10). Although not entirely clear, Plaintiff contends that he never sought monetary relief against any defendant in his or her official capacity.  (*Id.*).

Based on Plaintiff's representation in his response to Defendants' Motion to Dismiss, the undersigned construes Plaintiff's Supplemental Complaint as not seeking monetary relief against any defendant in his or her official capacity.  Accordingly, the

undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 41) on this issue be denied as unnecessary.

**B.    Injunctive Relief**

Defendants assert that Plaintiff's requested injunctive relief falls outside the narrow exception to Eleventh Amendment immunity under *Ex parte Young*, 209 U.S. 123 (1908), as well as outside the scope of the PLRA.  (D.E. 41, pp. 10-11).  Plaintiff responds that his requested relief is minimally intrusive and the least restrictive means available to remedy the violations of his rights.  (D.E. 42, p. 11).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).  Thus, the *Ex* parte Young exception applies when (1) a plaintiff has pled a valid claim for a violation of federal law against a state official responsible for enforcing the law at issue in that person's official capacity; (2) the claim seeks only prospective injunctive relief; and (3) the claim seeks to address a "continuing violation of federal law."  *Walker v. Livingston*, 381 F. App'x 477, 478-79 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)).

As discussed in detail below, Plaintiff has successfully stated several plausible RLUIPA and § 1983 claims. Plaintiff's allegations indicate that any possible violations of

his federal rights are ongoing at the McConnell Unit.    Plaintiff specifically seeks prospective injunctive relief with respect to his claims in the form of directing Defendants to: (1) provide all TDCJ inmates with the option for a kosher diet; (2) "cease from requiring changes to items that are sold from the commissary department"; (3) allow Plaintiff to observe Messianic Jewish holy days and gatherings; (4) allow volunteer Messianic Jewish organizers to come into TDCJ units; and (5) permit indigent inmates to obtain free Passover commissary items.  (D.E. 27, p. 10).

Such relief sought by Plaintiff essentially seeks to address the continuing violations of his rights.  Because the *Ex* parte Young exception applies in this case, Defendants' Motion to Dismiss (D.E. 41) should be denied as to whether Plaintiff's claims seeking prospective injunctive relief are barred by the Eleventh Amendment.

The undersigned recognizes that the PLRA also limits a court's ability to fashion injunctive relief.  Before a district court can award such relief, it must find that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation."  18 U.S. C. § 3626(a)(1)(A).  Under the PLRA, a plaintiff is not entitled to the most effective available remedy but rather a remedy that eliminates the constitutional injury.  *See Westefer v. Neal*, 682 F.3d 679, 683-84 (7th Cir. 2012) (vacating an injunction under the PLRA because it exceeded what was required under the Due Process Clause).

At this stage in the case, the undersigned cannot conclude that the injunctive relief sought by Plaintiff is not so narrowly drawn as to be the least intrusive means necessary to

correct any violation of his federal rights.  Following discovery and further development of the issues in this case, the Court will be in better position to consider whether the injunctive relief sought by Plaintiff violates the PLRA.

Accordingly, Defendants' Motion to Dismiss (D.E. 41) should be denied to the extent he seeks dismissal of Plaintiff's requests for injunctive relief as outside the scope of either *Ex parte Young* or the PLRA.

### C.    RLUIPA Claims

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden both "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The statute also provides for a cause of action for a RLUIPA violation. 42 U.S.C. § 2000cc–2(a).

Under the RLUIPA, a plaintiff bears the initial burden of showing that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *Mayfield v. Tex. Dept. of Criminal Justice.*, 529 F.3d 599, 613 (5th Cir. 2008).  Religious exercise is substantially burdened if the burden "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).  Once the plaintiff meets his initial burden, the burden shifts to the government to "demonstrate that its action was supported

by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Mayfield*, 529 F.3d at 613.

Congress enacted RLUIPA to provide broad protection for religious liberty. *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).  Thus, RLUIPA protections are expansive and are to be construed broadly to favor the maximum religious liberty appropriate in an institutional setting.  *Id.* at 357.

### (1)  Individual Capacity

RLUIPA does not permit a claimant to pursue claims against government officials in their individual capacities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 329 (5th Cir. 2009).  A plaintiff also may not seek monetary relief with respect to  RLUIPA claim. *Sossamon v. Texas*, 563 U.S. 277, 288 (2011) (holding that, because injunctive or declaratory relief is the only relief a court may grant under RLUIPA, a claimant may not seek monetary damages for his or her RLUIPA claim).

Defendants contend in their Motion to Dismiss that RLUIPA does not allow for individual capacity claims or claims seeking monetary relief.  (D.E. 41, pp. 9-10).  Plaintiff again responds, contrary to what he set forth in his Supplemental Complaint, that he seeks monetary relief only in the nature of punitive damages against Garcia and Garza in their individual capacities "for religious discrimination."  (D.E. 42, p. 10).  Nevertheless, Plaintiff indicates that he only seeks declaratory and injunctive relief with respect to his RLUIPA claims against certain defendants in their official capacities.  (*Id.*).

Based on Plaintiff's representation in his response to Defendants' Motion to Dismiss, the undersigned construes Plaintiff's Supplemental Complaint as not asserting a RLUIPA claim against any defendant in his or her individual capacity or otherwise seeking monetary relief with respect to his RLUIPA claims. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 41) on this issue be denied as unnecessary.

### (2)  *Merits of RLUIPA claims*

### Kosher Meals

Plaintiff claims that Defendants have violated RLUIPA by denying him a kosher diet. Defendants contend in their Motion to Dismiss that his RLUIPA claim regarding the denial of a kosher diet has been rejected by the Fifth Circuit. (D.E. 41, p. 12). Plaintiff responds that the denial of his religious diet places a substantial burden on his right to practice his faith. (D.E. 42, pp. 18-21).

In Baranowski *v. Hart*, 486 F.3d 112 (5th Cir. 2007), the Fifth Circuit analyzed a similar RLUIPA claim brought by an inmate regarding his religious diet. Based on evidence presented on summary judgment, the Fifth Circuit determined that: (1) the TDCJ's policy of not providing kosher meals to inmates was "related to maintaining good order and controlling costs and, as such, involve[d] compelling governmental interests[,]" and (2) the policy was the least restrictive means of maintaining good order and controlling costs. *Id.* at 125-26. In affirming the district court's grant of summary judgment in favor

of the defendants, the *Baranowski* court concluded that the TDCJ was not required to provide kosher meals to inmates.  *Id.* at 126.

Subsequently, in Moussazadeh *v. Texas Dep't of Crim. Justice,* 703 F.3d 781 (5th Cir. 2012), the Fifth Circuit reversed and remanded the district court's granting of summary judgment against a Jewish prisoner who alleged RLUIPA violations because he was denied a kosher diet.  *Id.* at 795-96.  The Fifth Circuit concluded that the TDCJ had placed a substantial burden on Moussazadeh's religious exercise and that a genuine issue of material fact existed as to whether the TDCJ employed the least restrictive means of achieving the government's interest by forcing a prisoner to pay for kosher meals.  *Id.* at 791–93.

Both *Baranowski* and Moussazadeh had proceeded past discovery to the summary judgment stage.  At this early stage in the case before discovery, the undersigned finds that Plaintiff has stated a plausible RLUIPA claim regarding the denial of kosher meals sufficient to survive Defendants' Rule 12(b)(6) motion.  *See Phillips v. Collier*, No. 5:19cv170, 2020 WL 5753614, at *5 (E.D. Tex. Aug. 17, 2020); *Perez v. Taylor*, No. C-13-029, 2013 WL 1628380, at *4 (S.D. Tex. Mar. 18, 2013).  Accordingly, Defendant's Motion to Dismiss (D.E. 41) should be denied as to Plaintiff's RLUIPA claim regarding the denial of kosher meals.

### Religious Headwear

Plaintiff claims that Defendants violated RLUIPA when they denied him the ability to wear his religious headwear known as a kippah.  Defendants contend in their Motion to Dismiss that his RLUIPA claim regarding the denial of specific religious headwear has been rejected by the Fifth Circuit.  (D.E. 41, pp. 12-13).  Plaintiff responds that the denial of the ability to wear the religious headwear of his choice along with the requirement to purchase religious headwear at the Commissary violates RLUIPA. (D.E. 42, p. 22).

While RLUIPA protections are expansive, the statute "does not give prisoners an unfettered right to religious accommodations." *Turner v. Texas Dep't of Crim. Justice*, 836 F. App'x 227, 230 (5th Cir. 2020) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 723-26 (2005)).  Furthermore, an inmate "does not suffer a substantial burden [to his religious exercise] just because the prison fails to provide all the religious accommodations that he desires." *Id.* (citing *Sefeldeen v. Alameida*, 238 F. App'x 204, 206 (5th Cir. 2007)).

"A 'kippah' – also known as a 'yarmulke' or a skull cap – is a Jewish religious item which is worn on the head." *Perry v. Allega*, No. 2:19-cv-00008, 2020 WL 4261820, at *1 (S.D. Ind. July 24, 2020).  Prisons are not required to provide inmates with such devotional accessories. *See Cutter*, 544 U.S. at 720, n.8.  The Fifth Circuit has held that the TDCJ policy requiring that a yarmulke either be one that is white with holes or one obtained from the commissary did not impose a substantial burden upon an inmate's ability to exercise his religious beliefs. *Turner*, 836 F. App'x at 230.  The *Turner* court explained:

> Though the headgear policy might impose an expense or burden upon prisoners, it neither pressures them to significantly modify their religious beliefs nor violates them. Unlike, for example, requiring inmates to purchase kosher food, the purchase or donation of a yarmulke is neither a frequently reoccurring expense nor a substantial burden on [the inmate's] religious practice.

*Id.* at 231.

Contrary to Plaintiff's contention, there is no material distinction between a "kippah" and "yarmulke," as each references a skullcap worn on the head by those practicing the Jewish faith. Plaintiff's allegations indicate that Garcia prohibited Plaintiff from wearing a head covering not purchased at the McConnell Unit's commissary. While preventing Plaintiff from wearing the kippah of his choice, Garcia did not deny Plaintiff the ability to wear a suitable head covering purchased from the commissary. *See Turner*, 836 F. App'x at 230 (recognizing that an inmate "does not have a right to wear a particular yarmulke at his choosing at all time" but that "[a] satisfactory accommodation is the touchstone").

Even when accepting Plaintiff's allegations as true, he has failed to state a RLUIPA claim against Defendants with regard to the denial of his ability to wear the religious headwear of his choosing. Accordingly, Defendants Motion to Dismiss (D.E. 41) should be granted as to this RLUIPA claim against Defendants in their official capacities.

**Unleavened Bread and Grape Juice**

Plaintiff claims that Defendants violated RLUIPA when they denied him access to unleavened bread and grape juice during Passover and the Feast of Unleavened Bread. Defendants contend in their Motion to Dismiss that this RLUIPA claim fails to state a claim because such limitations did not impose a substantial burden on Plaintiff's religious practice. (D.E. 41, p. 13). Plaintiff maintains that the denial of access to these essential components of Passover violated RLUIPA. (D.E. 42, p. 13).

Plaintiff alleges that the McConnell Unit's Commissary Manager denied Plaintiff access to certain items, namely unleavened bread and grape juice, which are essential during the Jewish observances of Passover and the Feast of Unleavened Bread. (D.E. 27, p. 7). Plaintiff's allegations further reflect that he has attempted to purchase these items every year but that the TDCJ summarily has restricted these items to the extent they fail to meet the required amounts needed for seven days of the Feast. (*Id.*).

Plaintiff's allegations, accepted as true, are sufficient to state a RLUIPA claim in that the denial of his religious diet during these Jewish holy periods may substantially burden his ability to practice his religion. *See Annabel v. Caruso*, No. 1:09-CV-176, 2011 WL 1376734, at *5 (W.D. Mich. Jan. 18, 2011) (holding that he denial of "a diet of 'grape juice and unleavened bread with no leaven on his trays" during Passover … constitutes a substantial burden on [the inmate's] ability to practice his religion"). Accordingly, Defendant's Motion to Dismiss (D.E. 41) should be denied as to Plaintiff's RLUIPA claim

regarding the denial of unleavened bread and grape juice during Passover and the Feast of Unleavened Bread.

### Religious Accommodations for Observing Holy Days

Plaintiff claims that Defendants violated RLUIPA by not providing specialized Messianic Jewish services for observing the designated Holy Days.  Defendants contend in their reply brief that Plaintiff did not raise this claim in the operative complaint and that such claim, therefore, should not be considered.  (D.E. 43, p. 2).  Liberally construed, however, a review of Plaintiff Supplemental Complaint reveals that he raised a RLUIPA claim related to the failure of prison officials to provide religious accommodations for the observance of designated Messianic Jewish Holy Days.  (D.E. 27, pp. 4, 9).  The undersigned finds that this RLUIPA claim has been properly raised in this case.

In his response to Defendants' Motion to Dismiss, Plaintiff expanded upon his claim by citing TDCJ policy which provides that observances for an inmate's particular faith shall be accommodated upon the availability of a chaplain or an approved volunteer.  (D.E. 42, pp. 11-12).  Plaintiff indicates that the process of acquiring an approved volunteer for the observances of designated Messianic Jewish Holy Days is an onerous one and that the McConnell Unit generally withholds approval for the few volunteers available for observances of these holidays.  (D.E. 42, p. 12; D.E. 46, p. 3).

Defendants contend that the Fifth Circuit has upheld TDCJ's policy of providing only generic religious services and limiting other religious programming based on the availability of outside volunteers.  (D.E. 43, p. 4).  Defendants maintain that TDCJ's policy,

which allows Plaintiff to request religious outside volunteers, does not substantially interfere with the exercise of his Messianic Jewish faith. (D.E. 43, p. 5).

In *Adkins*, *supra*, the plaintiff was a member of the Yahweh Evangelical Assembly (YEA). *Adkins*, 393 F.3d at 562. The YEA inmate challenged TDCJ policies which required gatherings of four or more inmates meeting for religious and study to be directly supervised by a TDCJ employee or TDCJ-approved volunteer. *Id.* at 571. The plaintiff specifically complained that the direct supervision requirement, when coupled with the shortage of outside volunteers, deprived him of opportunities for group religious practice. *Id.* at 562, 571. The *Adkins* court explained that the lack of such an opportunity resulted "not from some rule or regulation that directly prohibits such gatherings" but instead "from a dearth of qualified outside volunteers available to go to [the prison]." *Id.* at 571. The *Adkins* court held, therefore that the TDCJ policies at issue did not impose a substantial burden on the YAE inmate. *Id.*

In *Baranowski*, an inmate specifically complained about the TDCJ prison units' failure to allow for group religious services on Jewish holy days. *Baranowski*, 486 F.3d at 124-25. Like *Adkins*, the *Baranowski* court held that the lack of volunteers, and not the direct supervision requirement, caused religious gatherings on Jewish Holy Days to be infrequent and that "the acts of Defendants regarding religious services [did not place] a substantial burden on [the inmate's] free exercise of his Jewish faith, within the contemplation of RLUIPA." *Id.* at 125.

The Fifth Circuit, however, has not adopted a bright-line rule on this issue, cautioning that "whether the government action or regulation in question imposes a substantial burden on an adherent's religious exercise" "requires a case-by-case, fact-specific inquiry." *Adkins*, 393 F.3d at 571.  In *Sossamon*, the Fifth Circuit explained "[i]t is primarily cases in which the small number of available lay volunteers makes religious services less frequent than an adherent would like (but still available on a somewhat regular basis) that a neutrally applied policy does not substantially burden religious exercise." *Sossamon*, 560 F.3d at 334.  "Thus, the complete denial of a practice, whether by regulation or by the effect of the operation, is usually construed to be a substantial burden on religious exercise." *Inzunza v. Moore*, No. 2:09-CV-0048, 2011 WL 1211434, at *10 (N.D. Tex. Mar. 31, 2011).

Here, Plaintiff alleges that prison officials have denied his various requests seeking religious accommodations for observing the Holy Days as a Messianic Jewish believer and that the process for acquiring an approved volunteer to oversee the observances of these Holy Days is an onerous one whereby volunteers are generally denied.  Plaintiff's allegations, accepted as true, suggest that he is completely being denied the ability to participate in religious services during the designated Messianic Jewish Holy Days.

The undersigned finds that a fact-intensive inquiry into Plaintiff's RLUIPA claim is necessary to determine whether Defendants' actions regarding religious services during the designated Holy Days substantially burdened his ability to exercise his faith.  Accordingly, Defendant's Motion to Dismiss (D.E. 41) should be denied as to this RLUIPA claim.

### Proper Defendants for Plaintiff's RLUIPA Claims

As an initial manner, Defendants have informed the Court that Carlton Hazelwood (Hazelwood) has replaced Rutledge as the Director of TDCJ's Chaplaincy Department. (D.E. 41, p. 7, n.1).  Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), the undersigned respectfully recommends that Hazelwood be substituted in place of Rutledge in his official capacity only.

Plaintiff has stated plausible RLUIPA claims, as discussed above, regarding the denial of kosher meals, the denial of access to unleavened bread and grape juice during Passover and the Feast of the Unleavened Bread, and the denial of reasonable accommodations for observing the designated Messianic Jewish Holy Days.   In his Supplemental Complaint, Plaintiff seeks to hold each named defendant responsible for all of these RLUIPA violations.

Defendants contend in their Motion to Dismiss that Plaintiff lacks standing under Article III of the Constitution to pursue injunctive relief against them because they each lack authority to redress the injuries alleged by Plaintiff.  (D.E. 41, p. 11).  To establish Article III standing, Plaintiff's allegations must meet the following three elements: (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The redressability requirement mandates that a plaintiff show both the ability of the official to enforce the statute or regulation at issue, and the demonstrated willingness of the official to enforce the statute or regulation." *Norman v. Tompkins*, No. 1:18-cv437, 2020 WL 1182292, at *6 (E.D. Tex. Feb. 17, 2020) (citing *Okpalobi v. Foster*,

244 F.3d 405, 425-27 (5th Cir. 2001)).  A motion to dismiss for lack of standing is properly considered under Rule 12(b)(1).  *WesternGeco L.L.C. v. ION Geophysical Corp.*, 953 F. Supp. 2d 731, 741 (S.D. Tex. June 19, 2013).  A court, therefore, may consider evidence outside of the pleadings when resolving a Rule 12(b)(1) motion for lack of standing.  *Id.*

Here, Defendants have presented evidence to show that neither the TDCJ Chaplaincy Director (Hazelwood) nor the McConnell Unit officials named in the Supplemental Complaint (Wright, the Commissary Manager, Garcia, and Garza) have the authority to create, change, or grant exceptions to TDCJ's religious activities policies. (D.E. 41-1, 41-2).  Plaintiff maintains that: (1) the TDCJ Chaplaincy Director, through the chain of command, has the power to enact "state-wide policy changes and rectify the violations" of Plaintiff's rights; and (2) the McConnell Unit defendants had ample opportunities to rectify the violations of his rights and to ensure that Plaintiff received his essential Passover items.  (D.E. 42, pp. 12-13).

The undisputed evidence presented by Defendants establishes that they each lack the authority to change or make exceptions to TDCJ's religious activities policies that would allow them to redress Plaintiff's injuries via his requested injunctive relief.  *See McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (holding that, in the context of RLUIPA, the Fifth Circuit has held that a plaintiff does not have standing to pursue injunctive relief where the defendant lacks authority to redress the injuries); *Okpalobi*, 244 F.3d at 426-27 (explaining that plaintiffs "have no case or controversy" with defendants who have no power to redress the injuries alleged).  In addition, while Plaintiff identifies

actions taken by the McConnell Unit to deny him kosher meals, items necessary to celebrate Passover and the Feast of Unleavened Bread, and reasonable accommodations for observing Holy Days, it is unclear whether any named defendant has the authority to grant Plaintiff his requested injunctive relief at the unit level.

The undersigned finds *Perez* instructive on the issue of identifying the proper defendant or defendants in this case.  In *Perez*, inmate Josue Perez raised a RLUIPA claim regarding the denial of kosher meals and named several McConnell Unit officials as defendants.  *Perez*, 2013 WL 1628380, at *1.  Magistrate Judge Brian L. Owsley, however, determined that the TDCJ director was the proper defendant for Perez's RLUIPA claim, and recommended that: (1) the named defendants be dismissed; and (2) the TDCJ director be substituted as the proper defendant.  *Id.* at 3.

The current TDCJ director is Bobby Lumpkin.  The undersigned finds that TDCJ Director Lumpkin is most likely in the best position to provide the requested injunctive relief requested as to Plaintiff's claims to the extent he seeks changes to TDCJ's religious activities policies.  The McConnell Unit's warden, Jerry Sanchez, likewise appears to be in the best position to provide Plaintiff his requested injunctive relief to the extent he seeks injunctive relief related to actions taken at the prison unit level.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted to the extent that Plaintiff's RLUIPA claims (identified above as stating plausible claims for relief) be dismissed against Hazelwood and the McConnell Unit defendants in their official capacities for lack of standing; and (2) if it is determined that

none of these defendants in their official capacities is capable of providing Plaintiff with his requested injunctive relief on his RLUIPA claims, Plaintiff be granted fourteen (14) days to name TDCJ Director Lumpkin and McConnell Unit Warden Jerry Sanchez in their official capacities as the proper defendants.

### D.  First Amendment Free Exercise Claims

In his Supplemental Complaint, Plaintiff claims that Defendants Rutledge, Wright, and the Commissary Manager violated his First Amendment Free Exercise rights in several respects.  (D.E. 27, p. 8).  While unclear, it appears that Plaintiff seeks to sue these defendants in their individual and official capacities.

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While prisoners retain their First Amendment rights, including the right to free exercise of religion, they only retain those rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In evaluating the reasonableness of a prison regulation, four factors are considered: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89–91 (internal citations and quotation marks omitted). While *Turner*'s standard encompasses four factors, the Fifth Circuit has noted that "rationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield*, 529 F.3d at 607 (citation omitted).

### *(1) Kosher Diet*

Plaintiff claims that Defendants have violated his First Amendment rights by denying him a kosher diet.  Defendants contend in their Motion to Dismiss that his First Amendment claim regarding the denial of a kosher diet has been rejected by the Fifth Circuit.  (D.E. 41, p. 16).  Plaintiff does not offer a direct response to Defendants' contention, claiming generally that the denial of his religious diet placed a substantial burden on his right to practice his faith.  (D.E. 42, pp. 18-21).

The undersigned first notes that the First Amendment provides less protection than the RLUIPA.  *Holt*, 574 U.S. at 361-62; *McKnight v. MTC*, No. 3:15-CV-1647, 2015 WL 7730995, at *4 (N.D. Tex. Nov. 9, 2015).  The Fifth Circuit has never held that inmates of

any faith enjoy a First Amendment right to the religious diet of their choice. *See, e.g.,* *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988); *Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986). In *Kahey*, the Fifth Circuit specifically held that the prison was not required to accommodate a Muslim inmate's requirements regarding the content and preparation of his food. *Kahey*, 836 F.2d at 950-51. The Fifth Circuit reasoned that the prison had a "legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant." *Id.* at 950. It found that granting the inmate's request would be expensive, would divert resources from other penological goals, and could result in the perception of favoritism. *Id.* at 951

Subsequently, in *Baranowski*, the Fifth Circuit rejected the inmate's First Amendment claim regarding the denial of a kosher diet due in part to the high costs of providing kosher meals. *Baranowski*, 486 F.3d at 122. In rejecting the inmate's challenge, the *Baranowski* court cited prior Fifth Circuit decisions that "prisons need not respond to particularized religious dietary requests to comply with the First Amendment." *Id.* (citing *Kahey*, 836 F.2d at 950-51 and *Udey*, 805 F.2d at 1221).

Plaintiff's First Amendment challenge with respect to the denial of kosher meals is foreclosed by the holdings in *Kahey*, *Udey,* and *Baranowski*. *See Holmes v. Davis*, No. 6:20cv333, 2021 WL 2152544, at *4 (E.D. Tex. Mar. 30, 2021) (concluding that plaintiff's First Amendment Free Exercise claim challenging the prison's failure to provide him with halal meals did not state a claim for relief in light of controlling precedent in the Fifth Circuit); *Corbeil v. Moore*, No. 08-CV-1072, 2009 WL 320738, at *2 (W.D. La. Jan. 30,

2009) (holding that the plaintiff's First Amendment Free Exercise claim challenging the prison's failure to provide him with kosher meals was frivolous based on established Fifth Circuit and Supreme Court jurisprudence, including the Fifth Circuit's decision in *Baranowski*).

Even when accepting Plaintiff's allegations as true, he has failed to state a First Amendment Free Exercise claim against Defendants in their individual and official capacities with regard to the denial of kosher meals.  Accordingly, Defendants' Motion to Dismiss (D.E. 41) should be granted as to this claim.

### *(2) Religious Headwear*

Plaintiff claims that Defendants violated his First Amendment Free Exercise rights when they denied him the ability to wear his religious headwear known as a kippah. Defendants contend in their Motion to Dismiss that Plaintiff cannot state a First Amendment claim on this issue because Plaintiff failed to state a RLUIPA claim, which is more protective.  (D.E. 41, pp. 16-17).  Plaintiff does not offer a direct response to Defendants' contention, claiming generally that the denial of his preferred religious headwear violated RLUIPA. (D.E. 42, p. 22).

As discussed above, the First Amendment provides less protection than the RLUIPA. *Holt*, 574 U.S. at 361-62; *McKnight*, 2015 WL 7730995, at *4.  *See also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (recognizing that "RLUIPA imposes a more stringent standard than that of the First Amendment"). Because Plaintiff's related RLUIPA claim fails as discussed above, he is not entitled to relief under the less

stringent First Amendment standard. *See Jones v. Shabazz*, 352 F. Appx. 910, 915 (5th Cir. 2009) (explaining that, because TDCJ's policies satisfied RLUIPA, the plaintiff could not make out a claim under the First Amendment).

Even when accepting Plaintiff's allegations as true, he has failed to state a First Amendment Free Exercise claim against Defendants in their individual and official capacities with regard to the denial of his ability to choose and wear his own religious headwear. Accordingly, Defendants' Motion to Dismiss (D.E. 41) should be granted as to this First Amendment claim.

### *(3)* Unleavened Bread and Grape Juice

### Analysis

Plaintiff claims that Defendants violated his First Amendment Free Exercise rights when they denied him access to unleavened bread and grape juice for the Passover and Feast of the Unleavened Bread celebrations. Defendants contend in their Motion to Dismiss that this First Amendment claim fails to state a claim because prisons are under no such obligations to make such items available for purchase. (D.E. 41, p. 17). Plaintiff maintains that the denial of access to these essential components of Passover violated his constitutional rights. (D.E. 42, pp. 13-14).

Plaintiff's allegations are summarized above in connection with his related RLUIPA claim. Defendants rely on *Elam v. Henderson*, 472 F.2d 582 (5th Cir. 1983), to establish that prisons are under no constitutional obligation to make such religious dietary items available for purchase for Passover. In *Elam*, the Fifth Circuit considered whether prison

officials had deprived Muslim prisoners of their constitutional right to practice their religion by being provided meals "strictly in compliance with their religious dietary laws and to prepare" such meals in compliance with their religious practice.  *Id.* at 582.  The Fifth Circuit held that these inmates had only alleged very minor inconveniencies which, "in a very limited way, impinge[d] on the full exercise of [the Muslim inmates'] religious preferences."  *Id.* at 582-83.

Defendants also rely on *James v. Price*, No. 2:03-CV-0209, 2005 WL 483443 (N.D. Tex. Mar. 2, 2005).  In *James*, inmate Vincent James claimed that his First Amendment rights were violated when prison officials failed to provide him with unleavened bread for celebration of Passover.  *Id.* at 1.  On summary judgment, the district court rejected this claim on qualified immunity grounds because Plaintiff's allegations failed to support his claim that the lack of unleavened bread, or matzos, had been caused by any prison official's act or omission. *Id.* at 7.

The Fifth Circuit's decision in *Elam* does not address the precise First Amendment issue presented in this case.  The *James* case is distinguishable as it was decided at the summary judgment stage based on the particular facts presented.  Furthermore, in contrast to the factual scenario presented in *James*, Plaintiff's allegations indicate that the McConnell Unit's Commissary Manager acted to deny him his requested unleavened bread and grape juice.  Defendants otherwise have come forward with no controlling authority to foreclose Plaintiff's First Amendment claim on this issue.

Plaintiff's allegations, accepted as true for purposes of Defendants' Rule 12(b)(6) motion, are sufficient to state a First Amendment Free Exercise claim regarding the denial of unleavened bread and grape juice during Passover and the Feast of Unleavened Bread. *See Annabel*, 2011 WL 1376734, at * 7 (holding that an inmate's allegation regarding the denial of "a diet of 'grape juice and unleavened bread with no leaven on his trays" during Passover stated a First Amendment claim). Accordingly, Defendants' Motion to Dismiss (D.E. 41) should be denied as to this First Amendment claim.

## Individual Capacity

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). "Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff alleges that the McConnell Unit's Commissary Manager interfered with Plaintiff's attempt to order unleavened bread and grape juice "for the use during the Jewish observances of Passover and the Feast of Unleavened Bread." (D.E. 26, p. 6)). Plaintiff provides no allegation to indicate that Defendants Rutledge or Wright personally interfered with Plaintiff's right to celebrate Passover or the Feast of the Unleavened Bread or

otherwise implemented unconstitutional policies causing injury to Plaintiff.  Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 41) be: (1) granted to the extent that Plaintiff's First Amendment Free Exercise claim regarding the denial of religious items for Passover and the Feast of the Unleavened Bread be dismissed against Rutledge and Wright in their individual capacities; and (2) denied to the extent that Plaintiff has stated a First Amendment Free Exercise claim regarding the denial of these religious items against the Commissary Manager in his individual capacity.

### Official Capacity

As stated above, Defendants have presented evidence to show that neither the TDCJ Chaplaincy Director, Wright, or the Commissary Manager have the authority to create, change, or grant exceptions to TDCJ's religious activities policies.  (D.E. 41-1, 41-2). Thus, these defendants each lack the authority to change or make exceptions to TDCJ's religious activities policies that would allow them to redress Plaintiff's injuries via his requested injunctive relief seeking religious dietary items for Passover.  *See McCreary*, 738 F.3d at 655); *Okpalobi*, 244 F.3d at 426-27.  In addition, while Plaintiff identifies actions taken by the Commissary Manager to interfere with his celebration of Passover and the Feast of the Unleavened Bread, it is unclear whether this official  has the authority to grant Plaintiff his requested injunctive relief at the unit level.

The undersigned finds that TDCJ Director Lumpkin is most likely in the best position to provide the requested injunctive relief requested to the extent he seeks changes to TDCJ's religious activities policies.  The McConnell Unit's warden, Jerry Sanchez,

likewise appears to be in the best position to provide Plaintiff his requested injunctive relief to the extent he seeks injunctive relief related to actions taken at the prison unit level.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 41) be granted to the extent that Plaintiff's First Amendment Free Exercise claim regarding the denial of religious items for Passover and the Feast of the Unleavened Bread be dismissed against Hazelwood, Wright, and the Commissary Manager in their official capacities for lack of standing; and (2) if it is determined that none of these defendants in their official capacities is capable of providing Plaintiff with his requested injunctive relief on this claim, Plaintiff be granted fourteen (14) days to name TDCJ Director Lumpkin and McConnell Unit Warden Jerry Sanchez as the proper defendants.

## Religious Accommodations for Observing Holy Days

### Analysis

Plaintiff claims that Defendants violated his First Amendment Free Exercise rights by not providing religious accommodations in the form of specialized Messianic Jewish services for observing designated Messianic Jewish Holy Days.  Contrary to Defendants' contention, the undersigned concludes that Plaintiff raised this claim in his Supplemental Complaint.  (D.E. 27, pp. 4, 9).

Defendants essentially repeat the same arguments offered in connection with Plaintiff's related RLUIPA claim.  Plaintiff's allegations reflect, however, that the effect of TDCJ policies requiring outside volunteers for designated Messianic Jewish Holy Days, coupled with the scarcity of available volunteers and the onerous process required by

McConnell Unit official to approve an outside volunteer, has impacted his ability to practice his religious faith.

Plaintiff's allegations, accepted as true, have stated a plausible First Amendment claim at this early stage in the case.  *See Marr v. Collin County Detention Center*, No. 4:20-cv-273, 2021 WL 4168432, at *7 (E.D. Tex. Jul. 23, 2021) (recognizing that cases where inmates raise First Amendment and RLUIPA challenges to religious practices requires courts to "conduct a fact-intensive inquiry").  Accordingly, Defendant's Motion to Dismiss (D.E. 41) should be denied as to Plaintiff's First Amendment Free Exercise claim regarding whether Plaintiff was denied reasonable accommodations for observing the designated Messianic Jewish Holy Days.

## Individual Capacity

Plaintiff's allegations reflect that, in January 2020 and sometime later that year, Wright refused his requests seeking religious accommodations for observing the holy days as Messianic Jewish believer.  While alleging that he had made Rutledge aware of these issues, Plaintiff provides no facts to suggest that either Rutledge or the Commissary Manager personally participated in refusing Plaintiff's requests seeking religious accommodations or otherwise implemented any unconstitutional policies causing injury to Plaintiff.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be: (1) granted to the extent that Plaintiff's First Amendment Free Exercise claim regarding the denial of religious accommodations to observe designated Messianic Jewish

Holy Days be dismissed against Rutledge and the Commissary Manager in their individual capacities; and (2) denied to the extent that Plaintiff has stated a First Amendment Free Exercise claim on this issue against Wright in his individual capacity.

**Official Capacity**

For the same reasons set forth above in connection with Plaintiff's First Amendment claim regarding the denial of religious dietary items for Passover, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted to the extent that Plaintiff's First Amendment Free Exercise claim denial of religious accommodations to observe designated Messianic Jewish Holy Days be dismissed against Hazelwood, Wright, and the Commissary Manager in their official capacities for lack of standing; and (2) if it is determined that none of these defendants in their official capacities is capable of providing Plaintiff with his requested injunctive relief on this claim, Plaintiff be granted fourteen (14) days to name TDCJ Director Lumpkin and McConnell Unit Warden Jerry Sanchez as the proper defendants.

### E.     First Amendment Establishment Clause Claims

#### *(1) Analysis*

In his Supplemental Complaint, Plaintiff claims that Defendants violated the First Amendment's Establishment Clause by: (1) requiring only items sold in the Commissary to be used in religious activities; (2) requiring Plaintiff to change his religious designation to Orthodox Judaism in order to be transferred to a unit providing an appropriate Kosher

diet and allowing the observation of religious Holy Days; and (3) forcing Plaintiff to buy non-conforming religious headwear from the Commissary for profit.  (D.E. 27, pp. 8-9).

Under the First Amendment's Establishment Clause, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.  "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). As the Supreme Court has recognized, the "constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause." *Id.* at 245.

In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court set forth the general test for determining whether a government practice violates the Establishment Clause.  *Id.* at 612-13. Under *Lemon*, a court deciding whether government policy or practice violates the Establishment Clause asks "(1) whether the government activity in question has a secular purpose, (2) whether the activity's primary effect advances or inhibits religion, and (3) whether the government activity fosters an excessive entanglement with religion." *Van Orden v. Perry*, 351 F.3d 173, 177 (5th Cir. 2003).

Defendants contend in their Motion to Dismiss that *Turner's* reasonable relationship standard, applicable to First Amendment free exercises claim, applies to Establishment Clause claims.  (D.E. 41, p. 18).  Defendants contend that TDCJ's policy permitting kosher diets for Orthodox Jewish inmates, and not for Messianic Jewish inmates, does not violate the Establishment Clause because such policy passes the *Turner* test in the Free Exercise

context.  (*Id.*).  Plaintiff responds that he has stated Establishment Clause claims under the general *Lemon* test.

The Fifth Circuit has recently opined that "[t]he Supreme Court has not directly addressed the standard of review that applies when inmates assert a violation of the Establishment Clause, and more particularly, whether the applicable standard may depend upon the specifics of the claim." *Brown v. Collier*, 929 F.3d 218, 242 (5th Cir. 2019).  In *Brown*, the Fifth Circuit considered whether to apply *Turner's* reasonable-relationship standard, utilized in First Amendment free-exercise cases, to claims asserted under the Establishment Clause challenging prison policies that favor one or more faith groups more than another.  *Id.* at 242-244.  Fifth Circuit Judge Priscilla Owen authored the majority opinion in a 2-1 decision along with Circuit Judge Carolyn King.  Judge King, however, did not join in the portion of Judge Owen's majority decision endorsing the application of *Turner* to the Establishment Clause claims before the Court.  *Id.* at 243-44, 254.

In *Gutierrez v. Saenz*, Case No. 1:19-CV-00185, 2020 WL 12771965 (S.D. Tex. June 2, 2020), District Judge Hilda Tagle considered a death row inmate's claim that his scheduled execution without a TDCJ-employed chaplain to accompany him in his final moments violated the  Establishment Clause.  *Id.* at *2.  The court considered the parties' debate as to whether Gutierrez's claims should be governed by *Lemon* or *Turner's* reasonable-relationship standard.  *Id.* at *11-12.  Judge Tagle explained that "the Supreme Court has never used *Turner* to decide an Establishment Clause case brought by inmates" and that "Fifth Circuit law is also not settled on whether *Turner* applied to Establishment

Clause claims brought by inmates." *Id.* at 12.  Judge Tagle explained that "an opinion by one circuit judge is an insufficient basis to hold that Gutierrez's First Amendment claim fails as a matter of law" and further noted that "[o]ther courts [had] been reluctant to use the *Turner* test in Establishment Clause cases." *Id.* at 12 n.5 (collecting cases).[2]

Here, the undersigned agrees that Fifth Circuit authority is unsettled at this time as to whether *Turner* or a more stringent standard should be applied to Plaintiff's First Amendment claims advanced under the Establishment Clause.  While Defendants have construed Plaintiff's Establishment Clause claims as limited to the issue of permitting kosher diets, Plaintiff's allegations are more comprehensive in that they challenge actions related to constricting Plaintiff's ability to order religious dietary items needed to observe Passover, to observe designated Messianic Jewish holidays, and to wear religious headwear conforming to his religious faith.

Plaintiff's allegations, taken together and accepted as true, suggest that TDCJ policies may favor other religions over Messianic Judaism, which then has the coercive effect of forcing Plaintiff to choose another religion.  *See Everson v. Board of Education*, 330 U.S. 1, 15-16 (1947) (recognizing that the Establishment Clause prohibits federal and state officials from forcing or influencing "a person to go or to remain away from church against his will or force him to profess a belief or disbelief in any religion").  Accordingly,

---

[2] On appeal, in connection with considering a motion to vacate the district court's stay of execution, the Fifth Circuit addressed Gutierrez's Establishment Clause claim challenging the TDCJ's policy prohibiting a chaplain from being present in the execution chambers. *Gutierrez v. Saenz*, 818 F. App'x 309, 313 (5th Cir. 2020).  The Fifth Circuit held that the *Turner* standard applies to Gutierrez's claim as opposed to a strict scrutiny standard. *Id.*  The Supreme Court, however, has vacated the Fifth Circuit's decision and remanded the case to the district court. *Gutierrez v. Saenz*, 141 S. Ct. 127 (2020).

Defendant's Motion to Dismiss (D.E. 41) should be denied as to Plaintiff's First Amendment Establishment Clause claims.

### (2) Individual Capacity

Plaintiff's allegations reflect that Wright, Garcia, and the Commissary Manager acted engaged in acts to deprived Plaintiff of a kosher diet, certain religious accommodations for observing the designated Messianic Jewish Holy Days, and religious headwear appropriate for Messianic Jewish believers.  Plaintiff otherwise provides no allegations to suggest that Rutledge or Garza personally participated in denying Plaintiff his religious accommodations or otherwise implemented unconstitutional policies to cause injury to Plaintiff with respect to his Establishment Clause claims.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be: (1) granted to the extent that Plaintiff's First Amendment Establishment Clause claims be dismissed against Rutledge and Garza in their individual capacities; and (2) denied to the extent that Plaintiff has stated First Amendment Establishment Clause claims against Wright, Garcia, and the Commissary Manager in their individual capacities.

### (3) Official Capacity

For the same reasons set forth above in connection with Plaintiff's First Amendment claims, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted to the extent that Plaintiff's First Amendment Establishment Clause claims be dismissed against Defendants in their official capacities for lack of standing; and (2) if it is determined that none of these defendants in their official capacities is capable of providing

Plaintiff with his requested injunctive relief on his First Amendment Establishment Clause claims, Plaintiff be granted fourteen (14) days to name TDCJ Director Lumpkin and McConnell Unit Warden Jerry Sanchez as the proper defendants.

### E.    Equal Protection Claims

In his Supplemental Complaint, Plaintiff claims that his equal protection rights were violated as follows: (1) Defendants denied Plaintiff access to kosher meals and reasonable religious accommodations to observe designated Messianic Jewish Holy Days (2) Captain Garza made discriminatory remarks to Plaintiff after he refused to move to a different cell. (D.E. 27, pp. 4-9).

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). To establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski*, 486 F.3d at 123. *See also Oliver v. Kanan*, No. 4:09-CV-767, 2010 WL 2927333, at *3 (N.D. Tex. Jul. 28, 2010) (explaining that a plaintiff "must demonstrate that he was intentionally treated differently from similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent") (citation and internal quotation omitted).

Discriminatory purpose in an equal protection context implies the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997).

Defendants contend in their Motion to Dismiss that Garza, Wright, and Rutledge were not personally involved in any action that purportedly violated Plaintiff's equal protection rights. (D.E. 41, p. 14). Defendants further contend that, while Garza allegedly made discriminatory remarks to Plaintiff, this defendant took no action with respect to those remarks. (*Id.*). Lastly, Defendants contend that Plaintiff failed to state an equal protection claim with respect to the denial of access to a kosher diet. (D.E. 41, pp. 18-19). Plaintiff responds that each defendant personally participated in discriminatory actions against him. (D.E. 42, pp. 22-23).

Plaintiff alleges that Garza verbally harassed Plaintiff by making discriminatory remarks against him due to Plaintiff's religious beliefs. (D.E. 27, p. 4). Plaintiff, however, offers no allegations that Garza took any action against Plaintiff with respect to denying him access as a Messianic Jewish believer to a kosher diet or other religious accommodations. Plaintiff's allegations against Garza, therefore, fail to establish the requisite discriminatory intent required for an equal protection claim. Furthermore, his allegations referencing Garza's verbal abuse fail to state any kind of constitutional violation. *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (recognizing that words alone simply do not amount to a constitutional violation and thus relief under §

1983 is not available); *Ali v. Immigr. & Customs Enf't*, No. 1:16-CV-037-BL, 2017 WL 4325785, at *7 (N.D. Tex. Aug. 29, 2017) (recommendation of Mag. J.) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)), *adopted by* No. 1:16-CV-037-C, 2017 WL 4296756 (N.D. Tex. Sept. 26, 2017) ("Verbal harassment, without more, does not amount to a constitutional violation.").

With respect to his remaining equal protection claims, Plaintiff has failed to allege that Defendants engaged in purposeful discrimination in connection with Plaintiff's requests for a kosher diet and other religious accommodations.  Plaintiff acknowledges that TDCJ policy reserved kosher food for Orthodox Jewish inmates at specific units with "Jewish programming."  (D.E. 27, p. 8).  His allegations, accepted as true, fail to demonstrate that lack of the religious accommodations made available to him at the McConnell Unit were purposefully intended to discriminate against him due to his Messianic Jewish faith.  The fact that TDCJ policies disparately impacted Plaintiff's ability to practice his faith is insufficient to state an equal protection claim.  *See Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 862 (5th Cir. 2004) (holding that the Equal Protection Clause "does not demand 'that every religious sect or group within a prison – however few in numbers – must have identical facilities or personnel'") (quoting *Cruz*, 405 U.S. at 322; *Johnson*, 110 F.3d at 306 (explaining that "disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, *any* law [or government action] could be challenged on Equal Protection grounds by whomever it has negatively impacted").

Plaintiff's allegations, accepted as true, fail to state an equal protection claim against Defendants. Accordingly, Defendant's Motion to Dismiss should be granted as to Plaintiff's equal protection claims against Defendants in their individual and official capacities.

### F.    Qualified Immunity

With regard to Plaintiff's constitutional claims raised against Defendants in their individual capacities, the doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred. *See Pearson*, 555 U.S.

at 236.  In this case, as discussed above, Plaintiff has failed to state a claim for relief with

respect to the following § 1983 claims:

● Plaintiff's First Amendment Free Exercise claim regarding the denial of kosher meals;

● Plaintiff's First Amendment Free Exercise claim regarding the denial of his ability to wear his own religious headwear;

● Plaintiff's First Amendment Free Exercise claim regarding the denial of religious dietary items for Passover and the Feast of the Unleavened Bread against Rutledge and Wright in their individual capacities;

● Plaintiff's First Amendment Free Exercise claim regarding the denial of religious accommodations to observe designated Messianic Jewish Holy Days against Rutledge and the Commissary Manager in their individual capacities;

● Plaintiff's First Amendment Establishment Clause claims against Rutledge and Garza in their individual capacities; and

● Plaintiff's equal protection claims against Defendants in their individual capacities.

It is therefore not necessary to examine whether their actions were objectively reasonable

with respect to these claims.  Accordingly, the undersigned respectfully recommends that

Defendants' Motion to Dismiss (D.E. 41) be granted on the issue of qualified immunity as

to these claims.

Plaintiff, as discussed above, has stated plausible § 1983 claims as follows:

● Plaintiff's First Amendment Free Exercise claim regarding the denial of religious dietary items for Passover and the Feast of the Unleavened Bread against the Commissary Manager in his individual capacity;

● Plaintiff's First Amendment Free Exercise claim regarding the denial of religious accommodations to observe designated Messianic Jewish Holy Days against Wright in his individual capacity; and

● Plaintiff's First Amendment Establishment Clause claims against Wright, Garcia, and the Commissary Manager in their individual capacities.

Based on the allegations set forth in Plaintiff's Supplemental Complaint, the undersigned cannot conclude at this time that Defendants acted objectively reasonable in connection with these claims in light of clearly established law. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 25) be denied on the issue of qualified immunity as to these claims.[3]

### G.    Motion Seeking Preliminary Injunction Relief

Plaintiff moves the Court for preliminary injunctive relief. (D.E. 47). In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened

---

[3] Any decision to deny the Motion to Dismiss on the issue of qualified immunity is without prejudice to the individual defendants reasserting same through an appropriate motion for summary judgment. Indeed, the discovery process may reveal additional facts that entitle Defendants to qualified immunity on Plaintiff's claims. *See Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 698 (S.D. Tex. 2016).

injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

To obtain preliminary injunctive relief, Plaintiff first must demonstrate a likelihood of success on the merits of his lawsuit. *Sepulvado*, 729 F.3d at 417.  Plaintiff asserts that prison officials at the McConnell Unit continue to violate his RLUIPA and constitutional rights rights by continuing to favor Christian inmates and making no accommodations for inmates of other religions, including his Messianic Jewish faith.  (D.E. 47, p. 2). This posture of this case, however, is in the early stage, and the parties have not conducted any discovery with respect to Plaintiff's claims. While the undersigned has recommended above that Plaintiff's allegations were sufficient to state various RLUIPA and constitutional claims, Plaintiff has not demonstrated at this time a substantial likelihood of success on the merits of such claims.

Accordingly, the undersigned respectfully recommends that Plaintiff's motion seeking preliminary injunctive relief (D.E. 47) be denied.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that: (1) Jackee Soliz be **SUBSTITUTED** in place of "the Commissary Manager" to the extent this defendant is sued in his or her individual capacity; and (2) pursuant to Rule 25(d), Carlton Hazelwood be **SUBSTITUTED** in place of TDCJ Chaplaincy Director Michael Rutledge in his official capacity only.

The undersigned respectfully recommends further that Defendants' Motion to Dismiss (D.E. 41) be **GRANTED in part** and **DENIED in part**.  Defendants' Motion to Dismiss (D.E. 41) should be **GRANTED** to the extent that:

- Plaintiff's RLUIPA claim regarding the denial of his ability to wear his own religious headwear be **DISMISSED with prejudice** against Hazelwood, Wright, the Commissary Manager, Garcia, and Garza in their official capacities;

- Plaintiff's RLUIPA claims identified above as stating a claim for relief be **DISMISSED** against Hazelwood, Wright, the Commissary Manager, Garcia, and Garza in their official capacities for lack of standing;

- Plaintiff's First Amendment Free Exercise claim regarding the denial of kosher meals be **DISMISSED with prejudice** against Rutledge, Hazelwood, Wright, and the Commissary Manager in their respective individual and official capacities for failure to state a claim for relief and/or on qualified immunity grounds;

- Plaintiff's First Amendment Free Exercise claim regarding the denial of his ability to wear his own religious headwear be **DISMISSED with prejudice** against Rutledge, Hazelwood, Wright, and the Commissary

Manager in their respective individual and official capacities for failure to state a claim for relief and/or on qualified immunity grounds;

● Plaintiff's First Amendment Free Exercise claim regarding the denial of certain religious dietary items for Passover and the Feast of Unleavened Bread be: (1) **DISMISSED with prejudice** against Rutledge and Wright in their individual capacities for failure to state a claim for relief and on qualified immunity grounds; and (2) **DISMISSED** against Hazelwood, Wright, and the Commissary Manager in their official capacities for lack of standing;

● Plaintiff's First Amendment Free Exercise claim regarding the denial of religious accommodations to observe designated Messianic Jewish Holy Days be: (1) **DISMISSED with prejudice** against Rutledge and the Commissary Manager in their individual capacities for failure to state a claim for relief and on qualified immunity grounds; and (2) **DISMISSED** against Hazelwood, Wright, and the Commissary Manager in their official capacities for lack of standing.

● Plaintiff's First Amendment Establishment Clause claims be: (1) **DISMISSED with prejudice** against Rutledge and Garza in their individual capacities for failure to state a claim for relief and on qualified immunity ground; and (2) **DISMISSED** against Defendants in their official capacities for lack of standing; and

● Plaintiff's equal protection claims be **DISMISSED with prejudice** against Defendants in their individual and official capacities for failure to state a claim for relief and/or on qualified immunity grounds.

The undersigned respectfully recommends further that Defendants' Motion to

Dismiss (D.E. 41) be **DENIED** to the extent they seek dismissal of: (1) Plaintiff's claims

seeking monetary relief against Defendants in their official capacities; (2) Plaintiff's claims

asserting RLUIPA claims against any defendant in his or her individual capacity or otherwise seeking monetary relief with respect to his RLUIPA claims; and (3) Plaintiff's requests for injunctive relief as falling outside the scope of *Ex parte Young* and the PLRA.

The undersigned respectfully recommends further that Defendant's Motion to Dismiss (D.E. 41) be **DENIED** with respect to:

- Plaintiff's RLUIPA claims regarding the denial of a kosher diet, the denial of unleavened bread and grape juice during Passover and the Feast of Unleavened Bread, and the denial of reasonable accommodations for Plaintiff to observe designated Messianic Jewish Holy Days;

- Plaintiff's First Amendment Free Exercise claim regarding the denial of religious dietary items for Passover against the Commissary Manager in his individual capacity;

- Plaintiff's First Amendment Free Exercise claim regarding the denial of religious accommodations to observe designated Messianic Jewish Holy Days against Wright in his individual capacity; and

- Plaintiff's First Amendment Establishment Clause claims against Wright, Garcia, and the Commissary Manager in their individual capacities.

The undersigned respectfully recommends further that Plaintiff be **GRANTED fourteen (14) days** to name TDCJ Director Lumpkin and McConnell Unit Warden Jerry Sanchez in their official capacities for injunctive relief if it is determined that none of the defendants named in their official capacities for injunctive relief are capable of granting

the requested injunctive relief on Plaintiff's RLUIPA and § 1983 claims allowed to proceed forward.

Lastly, the undersigned respectfully recommends that Plaintiff's motion seeking preliminary injunctive relief (D.E. 47) be **DENIED**.

Respectfully submitted on June 9, 2022.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).